**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2005**

**PATRICK FISHER**
Clerk

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 04-2072

JUAN CARLOS CONTRERAS-MARTINEZ,

Defendant-Appellant.

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-03-2495-WPJ)**

Vicki Mandell-King, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Reeve Swainston, Assistant United States Attorney (David C. Iglesias, United States Attorney, and David N. Williams, Assistant United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **SEYMOUR**, **BALDOCK** and **BRISCOE**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Juan Carlos Contreras-Martinez appeals the district court's imposition of a consecutive sentence for his violation of supervised release. We affirm.

## I.

On April 17, 1999, Mr. Contreras pled guilty in Arizona district court to one count of illegally reentering the United States after deportation subsequent to an aggravated felony conviction, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The court sentenced him to 51 months imprisonment followed by a 24-month term of supervised release. Mr. Contreras was released from federal custody on January 13, 2003, and deported to Mexico. His period of supervised release was to run from the date of his release until January 12, 2005.

On May 6, 2003, Mr. Contreras was arrested in New Mexico after he was again found to be in the United States illegally. He pled guilty once again, this time in the District of New Mexico, to illegal reentry after deportation subsequent to an aggravated felony conviction. An Arizona probation officer filed a petition to revoke Mr. Contreras' supervised release, contending he had violated his conditions of release by committing a federal offense during his term of supervision. Jurisdiction on the revocation petition was subsequently transferred to the District of New Mexico.

The New Mexico district court sentenced Mr. Contreras to a term of 30

months imprisonment on the illegal reentry charge. The court thereafter held a hearing on the revocation petition and found Mr. Contreras had violated his conditions of supervised release. The court sentenced him to 21 months for the violation of supervised release pursuant to U.S.S.G. § 7B1, to be served consecutively to the 30-month term the court had ordered for his most recent illegal reentry. On appeal, Mr. Contreras contends the district court erred by failing to impose concurrent sentences for his immigration and supervised release violations.

## II.

In sentencing for a violation of supervised release, the court must consider "the applicable guidelines or policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3553(a)(4)(B). One relevant guideline, U.S.S.G. § 5G1.3, is applicable to "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment."

At the time of Mr. Contreras' sentencing, § 5G1.3(a) required a consecutive sentence when the defendant committed the instant offense while serving a term of imprisonment, or before the defendant began serving such a term. Section 5G1.3(b) required a concurrent sentence when "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction."

Section 5G1.3(c), a policy statement, applied in any other case involving an undischarged term of imprisonment, and authorized the district court to impose a sentence to run concurrently, partially concurrently, or consecutively to the undischarged sentence "to achieve a reasonable punishment."  The parties agree subsection (a) did not apply here.  Rather, Mr. Contreras contends subsection (b) mandated the imposition of a concurrent sentence because his illegal reentry and violation of supervised release sentences were based on the same underlying relevant conduct.

Because Mr. Contreras failed to argue at sentencing that the court was required, as a matter of law, to order the sentence it imposed for the supervised release violation to run concurrently with the sentence imposed for his illegal reentry, we review this claim for plain error.  *United States v. Hurlich*, 348 F.3d 1219, 1220 (10th Cir. 2003).  The plain error test requires Mr. Contreras to demonstrate the district court (1) committed error, (2) that is plain, and (3) affects substantial rights.  *United States v. Olano*, 507 U.S. 725, 732 (1993).  If Mr. Contreras meets his burden of establishing the first three prongs of the plain error test, we may exercise discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (quoting *Olano*, 507 U.S. at 736).  Here, however, we need not examine the second, third, or fourth prongs of the

plain error test because we conclude the district court committed no error.

"U.S.S.G. § 5G1.3(b)'s central aim is to ensure no defendant is punished twice for the same crime." *United States v. Moyer*, 282 F.3d 1311, 1316 (10th Cir. 2002) (internal quotation omitted). Accordingly, § 5G1.3(b) provides "credit[] for guidelines purposes [to] defendants who have already served time – generally in another jurisdiction – for the same conduct or course of conduct." *United States v. Johnson*, 40 F.3d 1079, 1082 (10th Cir. 1994) (internal quotations omitted). We thus declined in *Moyer* to apply § 5G1.3(b) where a defendant's conduct resulted in revocation of a term of probation plus an additional sentence, because the original term of probation stemmed from a separate offense. 282 F.3d at 1317; *see also United States v. Tisdale*, 248 F.3d 964, 974, 976-77 (10th Cir. 2001) (holding that § 5G1.3(c) provides a district court with discretion to sentence defendant consecutively or concurrently where conduct giving rise to the instant offense resulted in revocation of probation). Similarly, Mr. Contreras' conduct, his 2003 illegal reentry, resulted in revocation of his term of supervised release and an additional sentence because the original term of supervised release stemmed from a separate offense: his 1999 illegal reentry. Consequently, § 5G1.3(b) simply did not apply in the instant case.

Moreover, at the time of Mr. Contreras' sentencing, application note 3(C) to § 5G1.3(c) specifically provided that

[s]ubsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. *Consistent with the policy set forth in Application Note 4 and subsection (f) of §7B1.3* (Revocation of Probation or Supervised Release), *the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.*

U.S.S.G. § 5G1.3, cmt. n.3(C) (emphasis added).[1]  This cross-reference makes it clear that § 7B1.3(f) is the more appropriate sentencing provision when a defendant's supervised release has been revoked.

In the Introduction to Chapter 7, Part A, of the guidelines, the Sentencing Commission states:

Under 28 U.S.C. § 994(a)(3), the Sentencing Commission is required to issue guidelines or policy statements applicable to the revocation of probation and supervised release. At this time, the Commission has chosen to promulgate policy statements only. These policy statements will provide

---

[1]Under § 5G1.3(c), the sentencing court has the discretion to impose a sentence concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment.  U.S.S.G. § 5G1.3(c).  As this court has held:

§ 5G1.3(c) imposes no duty on the sentencing court but merely provides that, in any case not covered by the other two sections, the sentence "may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."  The use of the permissive word "may" and the reference to the need to achieve a reasonable punishment clearly contemplate an individualized examination of particular factors and an exercise of sentencing discretion by the sentencing court in assessing those factors.

*United States v. Tisdale*, 248 F.3d 964, 978 (10th Cir. 2001) (internal citation omitted).

guidance while allowing for the identification of any substantive or procedural issues that require further review. The Commission views these policy statements as evolutionary and will review relevant data and materials concerning revocation determinations under these policy statements. Revocation guidelines will be issued after federal judges, probation officers, practitioners, and others have the opportunity to evaluate and comment on these policy statements.

U.S.S.G. Ch. 7, pt. A. Consistent with this statement, we have recognized that the Chapter 7 provisions dealing with violations of supervised release are not mandatory sentencing guidelines; rather, they merely constitute "advisory" policy statements. *United States v. Tsosie*, 376 F.3d 1210, 1218 (10th Cir. 2004). "Although the policy statements regarding revocation of supervised release are advisory rather than mandatory in nature, they must be 'considered by the trial court in its deliberations concerning punishment for violation of conditions of supervised release.'" *Id.* (quoting *United States v. Lee*, 957 F.2d 770, 774 (10th Cir. 1992)). We made clear in *Tsosie* that "we will not reverse [a revocation sentence imposed by the district court] if it can be determined from the record to have been reasoned and reasonable." *Id.*[2] *See also United States v. Tedford*, No. 04-7079, 2005 WL 1023434, at *2 (10th Cir. May 3, 2005)

---

[2]This is the precise analysis now required for the application of all sentencing guidelines by the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738, 766 (2005) (citing *United States v. Tsosie*, 376 F.3d 1210, 1218-19 (10th Cir. 2004), for an example of the "reasonableness" standard of review); *see also United States v. Cotton*, 399 F.3d 913, 916 (8th Cir. 2005) (holding new standard of review under *Booker* same as one used on review of supervised release revocation).

Our review of the record convinces us the district court in this case committed no error in exercising its discretion and sentencing Mr. Contreras to consecutive terms of imprisonment. The court received a memorandum from the Arizona probation office which stated: "Provisions of Chapter Seven, including the revocation range, are policy statements intended to provide guidance and are not binding on the Court. § 7A1." Rec., vol. II at 16. The memorandum stated on the next page:

> In the case of a Grade B violation, any term of imprisonment imposed upon the revocation of supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release. § 7B1.3(f).

*Id.* at 17. Notwithstanding the seemingly mandatory language of § 7B1.3(f), when the memorandum and the Chapter 7 provisions are read as a whole it is clear the sentencing court was informed that § 7B1.3(f) is merely an advisory policy statement. In addition, at Mr. Contreras' sentencing hearing, the court entertained an argument from defense counsel detailing why the court should impose concurrent rather than consecutive sentences, further indicating the court knew the Chapter 7 policy statements were not binding. In fact, nothing on the record before us suggests the district court was unaware of the advisory nature of § 7B1.3(f).

The Chapter 7 policy statements applicable to Mr. Contreras recommend

-8-

revocation of supervised release and a term of imprisonment from 21 to 27 months because Mr. Contreras' conduct violating supervised release was a "Grade B" violation and he was in Criminal History Category VI at the time of his original sentencing. U.S.S.G. §§ 7B1.1(a)(2), 7B1.3(a)(1), 7B1.4(a). Thus, it was Mr. Contreras' criminal history category and his commission of a Class B violation – not relevant conduct – that resulted in the 21 to 27 month guideline range. U.S.S.G. § 7B1.4(a).

The violation of a condition of supervised release is a breach of trust and, while the sentencing court at revocation takes into account the seriousness of the underlying crime, it is primarily the breach of trust that is sanctioned. U.S.S.G. Ch. 7, pt. A, introductory cmt. The district court was well within its discretion to order Mr. Contreras' sentence for violation of his supervised release to run consecutively to his sentence for illegal reentry. In other words, the court's election to apply the Chapter 7 advisory policy statement exactly as written was not unreasonable. *See Tsosie*, 376 F. at 1218 (applying reasonableness standard to revocation sentence).

Mr. Contreras argues that because the district court gave no reasons for its discretionary decision to impose consecutive sentences, we cannot determine whether the sentences were reasoned and reasonable. We disagree. A court faced with a violation of supervised release is required to "consider" various factors set

forth in 18 U.S.C. § 3553(a) in exercising its discretion in sentencing. *Id.* §

3583(e)(3); *see also United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir.

2004).[3]  In *Kelley*, we "made it quite clear that the sentencing court is not

required to consider individually each factor listed in § 3553(a) before issuing a

sentence." *Id.* at 1305.  Moreover, we do not "demand that the district court

'recite any magic words' to show us that it fulfilled its responsibility to be

mindful of the factors that Congress has instructed it to consider." *Id.* at 1305

(internal quotation omitted).[4]

As we previously noted, prior to sentencing the district court reviewed a

memorandum from the probation office stating that the provisions of Chapter 7

---

[3]Those factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution. *See* 18 U.S.C. § 3553(a).

[4]In *United States v. Rose*, we noted that § 3553(c) imposes a general burden on the district court, which extends to all cases, to "state in open court the reasons for its imposition of the particular sentence." *See* 185 F.3d 1108, 1111-12 (10th Cir. 1999) (quoting 18 U.S.C. § 3553(c)).  As a result, we held it was error for the district court to impose consecutive terms under 18 U.S.C. § 3584 without any statement in the record of the court's reasoning because it left the panel in the "zone of [appellate] speculation." *Id.* at 1112-13.  The present case is distinguishable from *Rose* because § 7B1.3(f) explicitly recommends consecutive sentences, and as we discuss above, the record indicates the district court made it clear it was following this recommendation in imposing its sentences consecutively.  Consequently, we are not in the "zone of appellate speculation."

applied to Mr. Contreras' sentence and that these provisions were "not binding on the Court." Moreover, at the revocation hearing the court entertained arguments from both Mr. Contreras and his counsel concerning concurrent sentencing. Ultimately, the court stated on the record it was sentencing Mr. Contreras pursuant to U.S.S.G. § 7B1, and then imposed a consecutive sentence that is consistent with the guidelines and policy statements. We are thus convinced the court properly considered the nature and circumstances of Mr. Contreras' offense, his criminal history, and all other relevant factors when it sentenced him to consecutive terms of imprisonment. Under these circumstances, we have no difficulty concluding the court's sentence was reasoned and is reasonable.

Finally, Mr. Contreras contended for the first time at oral argument that the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), applies to his appeal and warrants a remand for resentencing. Specifically, Mr. Contreras argues that the district court erroneously sentenced him to consecutive sentences under a mandatory guidelines system. Because Mr. Contreras did not raise his *Booker* argument in the district court, we review for plain error. *Id*. at 769 (emphasizing whether a new sentencing hearing is required depends on "ordinary prudential doctrines," such as "whether the issue was raised below and whether it fails the 'plain-error' test").

In *Booker*, the Court held the appropriate remedy for any Sixth Amendment

-11-

violation resulting from the guidelines' mandatory nature was to sever and excise 18 U.S.C. § 3553(b)(1), rendering the guidelines advisory. *Id*. at 756-57. The Court also made clear the new advisory-guidelines system applies retroactively on direct review, whether or not a Sixth Amendment violation is present in any given case. *Id*. at 769 ("we must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review") (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). Because the guidelines governing revocation of supervised release are policy statements, however, the district court was functioning under a sentencing regime that even before *Booker* was advisory with respect to violations of supervised release. *See United States v. Fleming*, 397 F.3d 95, 101 (2d Cir. 2005). The district court knew that it was not bound by the Chapter 7 policy statements. Mr. Contreras' *Booker* claim fails the first prong of plain error analysis precisely because in exercising its discretion to impose consecutive sentences, the district court committed no error.

For the reasons stated above, we **AFFIRM**.