**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARMANDO CORDOVA, II,

Defendant - Appellant.

Nos. 05-6093, 05-6094

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. Nos. 01-CR-46-M and 02-CR-222-M)**

---

William P. Earley, Assistant Federal Public Defender (Paul Antonio Lacy, Assistant Federal Public Defender, on the briefs), Office of the Federal Public Defender for the Western District of Oklahoma, Oklahoma City, Oklahoma, appearing for Appellant.

Mark A. Yancey, Assistant United States Attorney (Robert G. McCampbell, United States Attorney, with him on the briefs), Office of the United States Attorney for the Western District of Oklahoma, Oklahoma City, Oklahoma, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **HENRY**, and **McCONNELL**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

On March 9, 2005, Defendant-Appellant Armando Cordova, II, stipulated to

allegations by his probation officer that he failed to comply with the terms of his supervised release. Based on the stipulation, the District Court revoked Mr. Cordova's supervised release and sentenced him to 36 months' incarceration. On appeal, Mr. Cordova argues that the revocation of his supervised release violated his Sixth Amendment rights to indictment by a grand jury, to a jury trial, and to be found "guilty" of violating the terms of his supervised release beyond a reasonable doubt. He also argues that the sentence imposed by the District Court is unreasonable. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In January 2000, Mr. Cordova was convicted of conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana and 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (hereinafter "first conviction"), and he was sentenced to 24 months' imprisonment and three years' supervised release. In August 2001, while serving his sentence of imprisonment, Mr. Cordova was convicted of aiding and abetting the attempted introduction of marijuana into a federal prison in violation of 18 U.S.C. §§ 1791(a)(1) and 2 (hereinafter "second conviction"), and he was sentenced to six months' imprisonment and three years' supervised release for that offense.

After completing his prison sentences, Mr. Cordova was released to supervision. His transition proved unsatisfactory, however, as evidenced by repeated violations of the terms of his supervised release. After providing Mr.

-2-

Cordova with several opportunities to reform his behavior, the District Court, on March 25, 2003, revoked his supervised release and sentenced him to serve 12 months' incarceration for each of his two prior convictions, to be served consecutively. The District Court also imposed new terms of supervised release—3 years on the first conviction and 2 years on the second conviction, to be served concurrently. Thereafter, Mr. Cordova completed his term of imprisonment, was again released to supervision, and again failed to adjust to that supervision.

For a third time, Mr. Cordova appeared at a hearing before the District Court—this time, based on allegations that he violated the conditions of his supervised release by testing positive for cocaine use, failing to report for further drug testing, and failing to participate in a mandated therapy program at a halfway house. Mr. Cordova stipulated to the allegations, and the District Court revoked Mr. Cordova's supervised release. In doing so, the court did not make any factual findings related to Mr. Cordova's conduct while on supervised release, but instead relied solely upon Mr. Cordova's stipulations.

In setting the sentence for these most recent infractions, the court first noted that each of the violations to which Mr. Cordova stipulated were Grade C violations. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") § 7B1.1. Given Mr. Cordova's criminal history category, the court then determined the Guidelines range for violating supervised release as to the first

conviction was 3 to 9 months' imprisonment with a statutory maximum of 24 months, and that the Guidelines range for violating supervised release as to the second conviction was 6 to 12 months' imprisonment with a statutory maximum of 12 months. *See* U.S.S.G. § 7B1.4; 18 U.S.C. § 3583(e)(3).[1] After acknowledging these ranges, the District Court sentenced Mr. Cordova to the statutory maximums—24 months as to the first conviction and 12 months as to the second conviction. *See* 18 U.S.C. § 3583(e)(3). The sentences were ordered to run consecutively. *See* 18 U.S.C. § 3584(a).

Mr. Cordova appeals his sentence on two grounds. Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker*, 543 U.S. 220 (2005), he first argues that revocation of supervised release in its present form violates the Sixth Amendment guarantees to indictment by a grand jury, to a jury trial, and to be found "guilty" of violating the terms of his supervised release beyond a reasonable doubt.[2] Second, Mr. Cordova argues that his sentence was neither reasoned nor reasonable.

---

[1]Mr. Cordova does not challenge the District Court's determination of the Guidelines ranges or the statutory maximums.

[2]To the extent Mr. Cordova also seeks to contest the original imposition of supervised release, we reject that contention as well. Such a collateral attack cannot be made in an appeal of the revocation of supervised release. *United States v. Hinson*, 429 F.3d 114, 116 (5th Cir. 2005); *United States v. White*, 416 F.3d 1313, 1316 (11th Cir. 2005); *see also Johnson v. United States*, 529 U.S. 694, 700 (2000) (stating that supervised release is "part of the penalty for the initial offense").

## II. DISCUSSION

A.    Sixth Amendment Challenge to Revocation of Supervised Release

Mr. Cordova's constitutional challenge is focused specifically on 18 U.S.C. § 3583(e)(3) and Fed. R. Crim. P. 32.1(b), which permit a judge to revoke a term of supervised release and impose a prison term in its stead based upon findings made by a preponderance of the evidence rather than beyond a reasonable doubt. Mr. Cordova maintains that this procedure is subject to the rule set forth in *Apprendi*—namely, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 466. In this way, he argues, 18 U.S.C. § 3583(e)(3) and Fed. R. Crim. P. 32.1(b) subvert his Sixth Amendment rights to indictment by a grand jury, a jury trial, and proof of his guilt beyond a reasonable doubt.

Mr. Cordova concedes that he did not raise these issues before the District Court. Accordingly, our review is for plain error. *United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004); Fed. R. Crim. P. 52(b). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* We conclude that there is no error.

It is well-settled that supervised release is "part of the penalty for the initial offense," *see Johnson*, 529 U.S. at 700, and that "once the original sentence has

been imposed in a criminal case, further proceedings with respect to that sentence [have not been] subject to Sixth Amendment protections," *United States v. Work*, 409 F.3d 484, 491 (1st Cir. 2005); *see also Johnson v. United States*, 529 U.S. 694, 698 (2000) (noting that violations of supervised release need only be found by a judge by a preponderance of the evidence); *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (holding that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply"); *United States v. Carlton*, 442 F.3d 802, 807 (2d Cir. 2006) ("[T]he 'full panoply of rights' due a defendant in a criminal prosecution does not apply to revocation hearings for parole, for probation, or for supervised release." (citations omitted)). Nevertheless, Mr. Cordova entreats this Court to revisit this issue in light of *Apprendi* and its progeny, *Ring v. Arizona*, 536 U.S. 584 (2002) (Sixth Amendment is violated when a judge, rather than a jury, determines the existence of aggravating factors when imposing the death penalty) and *Booker*, 543 U.S. 220 (Sixth Amendment is violated when a court, relying upon judge-found facts other than those of a prior conviction, mandatorily increases a defendant's sentence).

Following a similar challenge to the revocation of supervised release, the Second Circuit thoroughly explained why jury trial rights do not attach to revocation proceedings:

[A] sentence of supervised release by its terms involves a surrender

of certain constitutional rights and this includes surrender of the due process rights articulated in *Apprendi.* The full panoply of procedural safeguards does not attach to revocation proceedings because the Supreme Court has "distinguished revocation proceedings from criminal prosecutions on the ground that a probationer *already stands convicted of a crime.*" *United States v. Brown*, 899 F.2d 189, 192 (2d Cir.1990) (emphasis added).

Consequently, it is evident that the constitutional rights afforded a defendant subject to revocation of supervised release for violation of its conditions are not co-extensive with those enjoyed by a suspect to whom the presumption of innocence attaches. Given a prior conviction and the proper imposition of conditions on the term of supervised release, when a defendant fails to abide by those conditions the government is not then put to the burden of an adversarial criminal trial. Instead, there is, as in this case, a revocation of release hearing at which, as the Supreme Court instructs, neither the right to a jury trial, nor proof beyond a reasonable doubt is required. As the Supreme Court has explained in the context of parole, *cf. Johnson*, 529 U.S. at 710-11, 120 S. Ct. 1795 (noting "similarity" between supervised release and parole, citing *United States v. Meeks*, 25 F.3d 1117, 1121 (2d Cir.1994)), such proceedings "arise[ ] after the end of the criminal prosecution, including imposition of sentence. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions," *Gagnon* [*v. Scarpelli*], 411 U.S. [778,] 781, 93 S.Ct. 1756 [(1973)] (quoting *Morrissey*, 408 U.S. at 480, 92 S.Ct. 2593); *see also* [*United States v.*] *Knights*, 534 U.S. [112,] 119, 122 S.Ct. 587 [(2001)] ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled."); *United States v. Cranley*, 350 F.3d 617, 621 (7th Cir.2003) (noting that "it has long been understood that a fundamental and unchallenged condition of probation is that the probationer surrender his right to trial by jury should the government seek revocation, and thus imprisonment").
. . .

There is no reason why the conditions of supervised release, which uncontroversially deprive the convicted of *substantive* constitutional rights, cannot also deprive the defendant of certain *procedural* constitutional rights for a specified term and under specific circumstances. In other words, it is of no constitutional

-7-

concern that the conditions placed on a defendant's liberty in supervised release encompass by implication the additional condition expressed in § 3583(e)(3): that the defendant surrender his rights to trial by jury and to having accusations against him proved beyond a reasonable doubt.

*United States v. Carlton*, 442 F.3d 802, 809–10 (2d Cir. 2006) (omission in original). We agree fully with the Second Circuit's analysis and accordingly reject Mr. Cordova's constitutional challenge to 18 U.S.C. § 3583(e)(3) and Fed. R. Crim. P. 32.1(b).

Although the foregoing is sufficient to dispose of all of Mr. Cordova's constitutional challenges, we also note that *Booker* made clear that the Sixth Amendment does not prohibit sentences based solely on facts admitted by the defendant. *Booker*, 543 U.S. at 267. In this case, Mr. Cordova admitted the facts establishing that he violated the terms of his supervised release; therefore, there was no transgression of the Sixth Amendment by use of judge-found facts. *See id.*; *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (a sentence based solely on facts admitted by the defendant does not violate the Sixth Amendment). Moreover, *Booker* has no bearing in this case because the imposition and revocation of supervised release has always been left to the discretion of the court. *See United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1257 (10th Cir. 2006); *see also United States v. Contreras-Martinez*, 409 F.3d 1236, 1243 (10th Cir. 2005) (no *Booker* error when district court sentences defendant under the advisory Chapter 7 policy statements).

B.      Reasonableness

Mr. Cordova's next argument is twofold: He contends that he should be resentenced because the District Court failed to articulate the basis for imposing a sentence higher than that recommended by the Guidelines and because the District Court failed to explain why it ordered the two sentences to run concurrently. With respect to Mr. Cordova's first contention, it is now axiomatic that a sentence in excess of that recommended by the Chapter 7 policy statements will be upheld "if it can be determined from the record to have been reasoned and reasonable." *Rodriguez-Quintanilla*, 442 F.3d at 1258. With respect to his second argument, we recently noted an "apparent incongruence in our precedent" as to the applicable standard of review when reviewing the imposition of consecutive sentences. Specifically, it is unclear post-*Booker* whether such decisions should be reviewed for reasonableness or for an abuse of discretion. *See id.* (citing *Contreras-Martinez*, 409 F.3d at 1241–42). We need not explore "the exact contours of our post-*Booker* standard of review," *id.*, however, because we conclude that the District Court did not abuse its discretion and that the sentence was both procedurally and substantively reasonable.

In imposing a sentence following revocation of supervised release, a district court is required to consider both Chapter 7's policy statements, *see United States v. Tedford*, 405 F.3d 1159, 1161 (10th Cir. 2005), as well as a number of the factors provided in 18 U.S.C. § 3553(a), *see* 18 U.S.C. §§ 3583(e),

3584(b); *see also United States v. Rose*, 185 F.3d 1108, 1111 (10th Cir. 1999).

The § 3553(a) factors include:

> [T]he nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution.

*Contreras-Martinez*, 409 F.3d at 1242 n.3.

The sentencing court, however, "is not required to consider individually each factor listed in § 3553(a)," nor is it required to "recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider" before issuing a sentence. *Rodriguez-Quintanilla*, 442 F.3d at 1258–59 (internal quotations omitted); *Tedford*, 405 F.3d at 1161. After reviewing the record, we are satisfied that the District Court adequately considered the relevant sentencing factors.

In sentencing Mr. Cordova, the District Court stated:

> Well, the Court is certainly not unfamiliar with you, Mr. Cordova; you were just here, and the Court gave you an opportunity to [take] kind of one last bite at the apple to go and try to work through the program there, and it obviously hasn't worked out for you.
> What this Court is going to order, I'm going to revoke your supervised release in both these cases. I'm going to impose 12 months on the [second conviction]. I'm going to run that consecutively with—I'm going to give you the statutory punishment on the other case, [the first conviction], which will be 24 months. So that will be a total of 36 months.

I'm going to order the [Residential Drug Abuse Program]. It takes about six to 12 months to get into that program. It's a 500-hour program. There's nothing to say you have to do it, but I hope you will take advantage of it.

 . . . I do encourage you to take advantage of—only you are going to be able to change your lifestyle, Mr. Cordova.

The court clearly indicated that Mr. Cordova's repeated violations of the terms of supervised release and the court's familiarity with Mr. Cordova's inability to conform his behavior to the terms of supervised release were significant factors in sentencing. *See* 18 U.S.C. § 3553(a)(1) (courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant"); *see also Tedford*, 405 F.3d at 1161 (upholding sentence four times longer than recommended by the Guidelines based upon the defendant's repeated violations of supervised release). Moreover, the District Court indicated its concern that Mr. Cordova's failure to abide by the terms of supervised release were due to his ongoing substance abuse problems, and suggested Mr. Cordova participate in a drug rehabilitation program for which he would not be eligible for nearly twelve months and which would require an additional nine months to complete. *See* 18 U.S.C. § 3553(a)(2)(D) (courts must consider whether the defendant needs medical care or other correctional treatment); *see also Tsosie*, 376 F.3d 1210, 1212 (10th Cir. 2004) (upholding sentence twice the duration recommended by the Guidelines based upon the defendant's need for rehabilitation). As such, we find that the District Court

-11-

adequately considered the relevant sentencing factors.

For similar reasons, we also conclude that the length of Mr. Cordova's sentence is reasonable. A district court has discretion to impose consecutive sentences after the revocation of supervised release, *see* 18 U.S.C. § 3584, and based upon Mr. Cordova's history of recidivism and substance abuse, we find the exercise of that discretion reasonable in this case. Accordingly, Mr. Cordova is not entitled to be resentenced on this basis.

### III. CONCLUSION

A defendant in a supervised release revocation proceeding is not entitled to indictment by a grand jury, to a jury trial, or to be found "guilty" of violating the terms of his supervised release beyond a reasonable doubt. Mr. Cordova's sentence following revocation was therefore not imposed in violation of the Sixth Amendment. Further, the District Court did not abuse its discretion in imposing the particular sentence, nor was the sentence unreasonable. We therefore AFFIRM.