**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 25, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

COREY RAY HARRISON,

      Defendant-Appellant.

No. 09-6037
(D.Ct. No. 5:08-CR-00104-M-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

Before **BARRETT, ANDERSON,** and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Defendant-Appellant Corey Ray Harrison appeals his sentence following
revocation of his supervised release. He asserts the district court erred in

_____

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

considering prior violations of his supervised release in support of the instant revocation, which he claims violates the doctrines of res judicata and collateral estoppel. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Harrison's ten-month term of imprisonment following revocation of his supervised release.

## I. Procedural Background

In 2002, Mr. Harrison pled guilty to one count of robbery affecting commerce, in violation of 18 U.S.C. § 1951, for which the district court sentenced him to seventy-eight months imprisonment and three years supervised release. On September 4, 2007, Mr. Harrison began his three-year term of supervised release. On October 19, 2007, just six weeks after his supervised release began, Mr. Harrison was charged with driving under the influence with a suspended license and no insurance verification while transporting an open container of alcohol. Several months later, on August 3, 2008, authorities arrested Mr. Harrison on three misdemeanor charges for obstructing an officer, driving with a suspended license, and transporting an open beer container, to which he pled guilty.

On October 1, 2008, Mr. Harrison's federal probation officer filed a request to modify the conditions or terms of Mr. Harrison's supervision, based on his: (1)

arrest on August 3, 2008, for the three misdemeanor charges; (2) leaving the judicial district on the same date without prior permission; and (3) failure to report to his probation officer the two misdemeanor charges for obstructing an officer and transporting an open beer container. After Mr. Harrison waived a hearing and consented to modification of the terms of his supervised release, the district court ordered him to serve ninety days at the Oklahoma Halfway House and to abide by all its policies and procedures. Based on various intervening circumstances, Mr. Harrison did not begin his time at the halfway house until months later, on January 20, 2009, at 7:30 p.m.

Prior to his entry into the halfway house on January 20, 2009, Mr. Harrison missed at least five substance abuse counseling sessions in violation of his supervised release. In addition, Mr. Harrison violated halfway house rules for possessing a cell phone in January 2009 and for refusing to submit to a breathalyzer test on February 1, 2009.[1] Following an administrative hearing held on February 3, 2009, for Mr. Harrison's failure to submit to a breathalyzer test, the halfway house terminated his stay. As a result, he did not complete most of

---

[1] While the government and district court noted the cell phone incident occurred on January 30, 2009, Mr. Harrison's counsel pointed out it occurred on January 21, 2009. Similarly, while the government and district court indicated the breathalyzer incident occurred on January 31, 2009, halfway house incident reports show Mr. Harrison's refusal to submit to a breathalyzer test occurred on February 1, 2009. The discrepancy in these dates does not, however, affect our disposition of this appeal.

his ninety-day term at the halfway house, spending only a couple of weeks at the facility before his administrative hearing and termination.

The government petitioned the district court for a warrant or summons for revocation of Mr. Harrison's supervised release, which it premised on his: (1) arrest on August 3, 2008, for the three misdemeanor charges; (2) leaving the judicial district on the same date without prior permission; (3) failure to report to his probation officer the two misdemeanor charges for obstructing an officer and transporting an open beer container; (4) violation of halfway house rules by possessing a cell phone and refusing to submit to a breathalyzer test, resulting in termination of his ninety-day term at the halfway house; and (5) failure to appear at six substance abuse counseling sessions. The amended petition also referenced his October 19, 2007 charge for driving under the influence with a suspended license and no insurance verification while transporting an open container of alcohol.

At a revocation hearing held on February 6, 2009, Mr. Harrison's counsel raised an objection to the district court's consideration of his first three violations in support of revocation on grounds it considered those same violations in October 2008 for the purpose of modifying the conditions of his supervised release. Thereafter, the parties presented evidence in support or opposition of

revocation. During his direct examination, Mr. Harrison admitted he committed the three prior violations to which he pled guilty; had been charged with driving under the influence at the beginning of his supervised release; and possessed a cell phone in violation of halfway house rules, but testified no one asked him to submit to a breathalyzer test on the day in question. In addition, Mr. Harrison testified he missed his last substance abuse counseling session because he moved into the halfway house on the same day and missed his other sessions because he was working; however, on at least one of those occasions, he called his counselor to let her know.

In turn, Mr. Harrison's probation officer testified Mr. Harrison missed six counseling sessions, including one on January 20, 2009, the day he checked into the halfway house, and that he was excused from only one counseling session due to work. The government also provided, as evidence, the monthly treatment reports showing Mr. Harrison failed to appear for the counseling sessions alleged. In addition, the government submitted a halfway house incident report in which two witnesses verified Mr. Harrison refused to submit to a breathalyzer test when asked. Finally, the probation officer testified Mr. Harrison's compliance with the terms of his supervised release had been "very poor" and recounted he was charged with driving under the influence shortly after his supervised release started; allowed friends to tamper with the electronic monitor on his leg;

participated in an altercation at a club in which he was stabbed, causing him to miss work for several months; was arrested on August 3, 2008, for the three misdemeanor charges; failed to report his offenses of obstruction of an officer and transportation of an open beer container; and failed to report, as instructed, to the halfway house by ten a.m. on January 20, 2009, and, instead, checked in that evening.

After confirming Mr. Harrison only completed approximately half of his three-year term of supervised release, leaving eighteen to nineteen months to serve, the district court revoked his supervised release and imposed a ten-month term of imprisonment without further supervised release.  In so doing, it stated it was "concerned about the cumulative effect of the conduct that [Mr. Harrison] exhibited while on supervised release."  R. Vol. 3 at 35.  More specifically, the district court explained:

> [I]f you take any one of these matters, they may not seem so large, certainly the criminal conduct.  Even if the Court doesn't even consider the criminal conduct, all of these [are] just kind of [a] litany of other conduct which, when you take it altogether, ... presents itself as just nearly a total disregard for the things that you are supposed to be doing or not doing during supervised release.
>
> While I guess a reason has been presented for many of the things, ... I just don't think I need to excuse the cumulative effect of your conduct alleged in [the] Amended Petition.
>
> ....

> [Y]ou certainly present [yourself] as a very intelligent young man and it is just the conduct, taken cumulatively, it is just inexcusable and shows a total disregard for what you are supposed to be doing during this time, Mr. Harrison.
>
> For that reason, I'm going to revoke – I will order that you serve ten months. I am not going to reimpose any supervised release at the end of that period because, quite frankly, I don't know if you will comply, based upon this kind of history of non-compliance with just about everything that the Court asked you to do.

*Id.* at 35-36. Thereafter, the district court entered a formal judgment and commitment order on revocation of supervised release, recounting the various violations Mr. Harrison committed. In its order, it recognized that it had previously modified Mr. Harrison's conditions of release based on the conduct related to the first three violations in the amended petition for revocation but noted Mr. Harrison did not complete his ninety-day term in the halfway house.

## II. Discussion

On appeal, Mr. Harrison contends the district court erred in considering his previous violations of supervised release in support of revocation of his supervised release, which he claims violates the doctrines of claim and issue preclusion, which he mostly refers to as issues of res judicata and collateral estoppel. Specifically, Mr. Harrison argues that because the district court previously rendered a final, unappealed judgment on these violations when it ordered the modification of his supervised release, it was barred from considering

the same violations in his subsequent revocation hearing. In making this argument, Mr. Harrison does not specifically complain the district court improperly calculated his term of imprisonment on revocation, failed to adequately explain its reasons for imposition of the sentence, or failed to consider the sentencing factors in 18 U.S.C. § 3553(a) or the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), including Chapter 7 dealing with revocation of supervised release. As a consequence, our review centers solely on his argument the district court erred in considering his prior violations of supervised release when it revoked his supervised release and imposed a term of ten months imprisonment.

In reviewing a sentence imposed after revocation of supervised release, we review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Tsosie*, 376 F.3d 1210, 1217-18 (10th Cir. 2004). We will not reverse a sentence following revocation of supervised release if the record establishes the sentence is "reasoned and reasonable." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005).

"It is well-settled that supervised release is part of the penalty for the initial offense." *See United States v. Cordova*, 461 F.3d 1184, 1186 (10th Cir. 2006) (quotation marks and citation omitted). Thus, "the Supreme Court has

distinguished revocation proceedings from criminal prosecutions on the ground that a probationer already stands convicted of a crime." *Id.* at 1187 (quotation marks and citation omitted). We have acknowledged "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependant on observance of special parole restrictions," leaving the convicted without certain substantive and procedural constitutional rights. *Id.* at 1187-88 (quotation marks and citation omitted).

Under the Federal Rules of Criminal Procedure and 18 U.S.C. § 3583, when a person violates the conditions of supervised release the district court may modify the conditions of release or revoke the term of supervised release and impose prison time. *See United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004); *see also* 18 U.S.C. § 3583(e)(2) and (3); Fed. R. Crim. P. 32.1(b). In imposing a sentence following revocation of supervised release, the district court is required to consider both the Guidelines Chapter 7 policy statements and the factors provided in 18 U.S.C. § 3553(a). *See Cordova*, 461 F.3d at 1188. The Chapter 7 policy statements apply to violations of probation and supervised release and include advisory guideline ranges for sentences following revocation of supervised release. *See generally* U.S.S.G. ch. 7 and § 7B1.3. Under Chapter 7 of the Guidelines, revocation of supervised release is considered appropriate for a defendant "who, having been continued on supervision after a finding of

violation, again violates the conditions of his supervision." U.S.S.G. § 7B1.3 cmt. n.1.

> The 18 U.S.C. § 3553(a) sentencing factors include:
>
> The nature and circumstances of the offense; *the history and characteristics of the defendant*; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution.

*Cordova,* 461 F.3d at 1188-89 (quoting *Contreras-Martinez*, 409 F.3d at 1242 n.3) (emphasis added). "The sentencing court ... is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." *Cordova*, 461 F.3d at 1189 (quotation marks and citations omitted). Instead, the district court must "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), and satisfy us that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

In this case, the district court provided its reasons for revoking Mr. Harrison's supervised release and we are satisfied it considered the parties'

arguments and had a reasoned basis for revoking his supervised release and imposing a term of imprisonment. To begin, it is obvious the district court considered Mr. Harrison's argument not to consider his prior violations, as evidenced by (1) its express recognition it had previously modified Mr. Harrison's conditions of supervised release based on those violations, but that he had not completed his ninety-day term in the halfway house imposed because of those violations; and (2) its statement it was his cumulative conduct that warranted revocation.

Moreover, as previously stated, under Chapter 7 of the Guidelines, revocation of supervised release is considered appropriate for a defendant, like Mr. Harrison, "who, having been continued on supervision after a finding of violation, again violates the conditions of his supervision." U.S.S.G. § 7B1.3 cmt. n.1. Mr. Harrison's collateral estoppel and res judicata arguments simply ignore the fact that his supervised release was merely part of the penalty for the initial offense and could be revoked in the event of repeated violations, even after modification of his supervised release. In other words, the continuation of his supervised release after his initial violations did not change the fact that his supervised release remained a "conditional liberty" dependant on his observation of the terms of his release, which he again violated. *See Cordova*, 461 F.3d at 1187-88.

In addition, under § 3553(a), a defendant's history and characteristics are included in the list of sentencing factors considered in revocation proceedings, so that "[t]he very language of the statute instructs the sentencing court to consider the defendant's 'history and characteristics.'" *United States v. Hahn*, 551 F.3d 977, 985 (10th Cir. 2008) (quoting 18 U.S.C. § 3553(a)(1)), *cert. denied*, 129 S. Ct. 1687 (2009). Here, as previously indicated, the district court clearly considered Mr. Harrison's history and characteristics when it considered his history of cumulative conduct, including non-compliance with the terms of his supervised release. Mr. Harrison's history of non-compliance included both his prior violations as well as his more recent violations of the modified terms of his supervised release. Indeed, those later violations caused his termination from the halfway house. Given Mr. Harrison completed only two weeks of the ninety-day term, we find it rather disingenuous for him to now argue that his prior violations, which the district court relied on in imposing that ninety-day term, should not be considered.

We further note that even if the district court had not considered Mr. Harrison's first three violations of his supervised release, his additional violations supported revocation and imposition of a term of imprisonment. As previously noted, these violations included not only his infringement of the halfway house rules which the district court ordered him to follow, but the fact his behavior at

the halfway house prevented him from serving the ninety-day term there, which was also a condition of his supervised release.  They also included his absence from various substance abuse counseling sessions.  Thus, based solely on these violations, we can conclude the district court's revocation of his eighteen-month term of supervised release and imposition of the ten-month term of imprisonment was both "reasoned and reasonable."

### III.  Conclusion

For these reasons, we **AFFIRM** Mr. Harrison's ten-month term of imprisonment following revocation of his supervised release.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge