**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 21, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　Plaintiff–Appellee,

v.

JAMES LEE LOMAN,

　　　Defendant–Appellant.

No. 14-6029
(D.C. No. 5:12-CR-00265-M-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

　　　James Loman appeals his convictions for several charges related to an illegal

kickback scheme he engaged in while employed at Tinker Air Force Base in Oklahoma

City. He also challenges his below-Guidelines sentence as procedurally and

substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

　　　[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

# I

Loman worked in various civilian positions at Tinker Air Force Base from 1976 to 2007. In the course of a separate investigation, law enforcement learned that Loman accepted $843,200 from Henry McFlicker, a seller of surplus airplane parts, between 2002 and 2006. During this time period, Loman was employed as an item manager at Tinker Air Force Base. In this position, he was responsible for locating airplane parts on the surplus market and soliciting bids from suppliers. Although he did not personally decide which parts to purchase, Loman wielded significant influence over the procurement process by deciding which bids would be included in the packages sent to contracting officials.

McFlicker and Loman entered into an arrangement under which Loman would be paid a percentage of the contracts awarded to McFlicker's companies for parts solicited by Loman. On several occasions, Loman traveled to Florida, where McFlicker's companies were located, to obtain cash payments.

Loman was indicted by a federal grand jury on November 7, 2012. On May 21, 2013, he was charged by superseding indictment with one count of conspiracy to defraud through bribery in violation of 18 U.S.C. §§ 1343 and 1346, one count of accepting a bribe in violation of 18 U.S.C. § 201(b)(2), and one count of being a federal employee with an illegal private financial interest in violation of 18 U.S.C. § 208(a). The first two counts alleged activities occurring between May 2002 and November 2006. Count three was based on a specific transaction on January 11, 2005. Following a hearing, the district

court found that Loman was competent to stand trial. A jury convicted Loman on all three counts. His advisory Guidelines range was 121 to 151 months. Citing 71-year-old Loman's poor health, the court elected to vary downwards and imposed a sentence of 30 months' imprisonment. Loman timely appealed.

## II

Loman first challenges the district court's finding that he was competent to stand trial. A defendant is incompetent if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The defendant bears the burden of establishing incompetency. Cooper v. Oklahoma, 517 U.S. 348, 355 (1996). We review a district court's competency finding for clear error, reversing only if this court is "left with the definite and firm conviction that a mistake has been committed." United States v. deShazer, 554 F.3d 1281, 1286 (10th Cir. 2009) (quotation omitted).

The district court heard testimony from two psychologists who interviewed Loman. Dr. Sean Roberson testified on behalf of the government that Loman performed extremely poorly on the Dementia Rating Scale, Second Edition. Dr. Roberson then attempted to administer the Validity Indicator Profile, a test intended to measure whether the subject is responding in an honest manner. Because Loman took so long on that test, Dr. Roberson decided to switch to a different malingering exam, the Test of Memory Malingering ("TOMM"). On three TOMM trials, Loman scored lower than individuals

-3-

who had been instructed to malinger. Dr. Roberson also noted other signs that Loman was feigning incompetence: Loman made comments suggesting he was mentally impaired even though most individuals suffering dementia are unaware of their condition; Loman's treating physician had not noted signs of dementia in his notes; and Loman's symptoms were not present in conversations recorded during the prior two years. Roberson opined that Loman was capable of understanding the proceedings against him and of assisting his counsel, and that he was feigning impairment.

Loman presented testimony from Dr. Curtis Grundy, who reached the opposite conclusion. Dr. Grundy testified that Loman's house was in disrepair, Loman was unable to recall basic details of his personal history (including his daughters' last names), and that Loman's treating physician stated that he "wouldn't be surprised if Mr. Loman was incompetent." Loman performed poorly on the Reynolds Intellectual Assessment Scale, the Mini Mental Status Examination, and the MacArthur Competency Assessment Tool administered by Dr. Grundy. However, he scored well on the TOMM with Dr. Grundy, indicating that he was not malingering. Dr. Grundy testified that in his opinion, Loman was incompetent to stand trial.

Dr. Grundy made several concessions during his cross-examination. He testified that he would seriously consider malingering if Loman had performed as poorly on the TOMM as he did with Dr. Roberson. And Dr. Grundy acknowledged that Loman's medical records did not indicate a history of stroke despite his earlier belief to the contrary. Further, Dr. Roberson explained that individuals often malinger only when

they believe they need to do so, and thus it is not a static behavior.  The district court also heard lay testimony indicating that Loman did not appear impaired during his interactions with family members and others.  Loman provided a rambling statement at the close of the hearing.

The district court thoroughly considered this partially conflicting evidence.  It found by a preponderance of the evidence that Dr. Roberson's malingering opinion was persuasive and that Loman was competent.  Giving due regard to the district court's fact-finding role, see United States v. Pompey, 264 F.3d 1176, 1179 (10th Cir. 2001), we cannot say the district court's conclusion was clearly erroneous.

## III

Loman also challenges the timeliness of the superseding indictment.  "Generally, we review the grant or denial of a motion to dismiss an indictment for an abuse of discretion."  United States v. Giles, 213 F.3d 1247, 1248 (10th Cir. 2000).  If the motion to dismiss turns on an issue of statutory interpretation, however, our review is de novo.  Id. at 1248-49.

The offenses at issue in this case are subject to a five-year limitations period.  See 18 U.S.C. § 3282(a).  In the May 2013 superseding indictment,[1] Loman is charged with

---

[1] "[A] super[s]eding indictment relates back to the original indictment's date if the super[s]eding indictment does not broaden or substantially amend the original charges."  United States v. Qayyum, 451 F.3d 1214, 1218 (10th Cir. 2006) (quotation omitted).  Because we conclude the charges were timely using the date the superseding indictment was filed, we need not consider whether it relates back to the original indictment.

conduct ending in November 2006 as to counts one and two, and occurring in January 2005 as to count three. Loman contends that under § 3282(a), these charges had to be filed by November 2011 and January 2010, respectively. The government counters that the limitations period was tolled by the Wartime Suspension of Limitations Act ("WLSA"), 18 U.S.C. § 3287.

The present version of WLSA provides:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.

Id. This version of the statute includes a set of amendments passed on October 14, 2008. See Duncan Hunter National Defense Authorization Act for Fiscal Year 2009, Pub. L. No. 110-417, § 855, 122 Stat. 4356, 4545-46 (2008). Prior to that date, the statute extended the limitations period by three rather than five years, and applied only if the United States was "at war"—an authorization for the use of force was not specifically referenced. Id.; see also 18 U.S.C. § 3287 (2006) (amended).

-6-

Loman does not argue that the charges against him would be untimely under the present version of WLSA. We will accordingly assume that the 2001 and 2002 Congressional authorizations for the use of force qualify under the post-amendment WLSA, and that the tolling periods triggered by those authorizations have yet to terminate. See Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. No. 107-243, 116 Stat. 1498; Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001); see also United States ex rel. Carter v. Halliburton Co., 710 F.3d 171, 179 (4th Cir. 2013) ("Neither Congress nor the President had met the formal requirements of [WLSA] for terminating the period of suspension . . . .").

Rather than challenging the timeliness of the charges under the current version of WLSA, Loman advances a two-part argument. He claims that the post-amendment version of WLSA cannot be applied to him without violating the Ex Post Facto Clause, U.S. Const. art. 1, § 9, cl. 3, and that the pre-amendment version of WLSA is inapplicable because the United States was not "at war" at the time of his offenses. Because our circuit precedent forecloses us from accepting Loman's first premise, we reject his argument without considering the second.

"[T]he application of an extended statute of limitations to offenses occurring prior to the legislative extension, where the prior and shorter statute of limitations has not run as of the date of such extension, does not violate the ex post facto clause." United States v. Taliaferro, 979 F.2d 1399, 1402 (10th Cir. 1992); see also United States v. Grimes, 142 F.3d 1342, 1351 (11th Cir. 1998) ("[A]ll of the circuits that have addressed the issue

under other statutes have uniformly held that extending a limitations period before the prosecution is barred does not violate the Ex Post Facto Clause."). By contrast, the Supreme Court has held that a statute that revives a limitations period that has already expired would offend the Ex Post Facto Clause. See Stogner v. California, 539 U.S. 607, 609 (2003). But the Court expressly stated that this rule does not apply to unexpired limitations periods. See id. at 618 ("[C]ourts have upheld extensions of unexpired statutes of limitations[,] extensions that our holding today does not affect . . . .") (parenthetical omitted).

Our holding in Taliaferro controls. Loman was charged with committing an offense that occurred in January 2005 and two offenses that continued until November 2006. Congress amended WLSA in 2008, well within the pre-existing five-year limitations period for all three offenses. See 18 U.S.C. § 3282. Accordingly, the post-amendment version of WLSA extended the limitations period applicable to Loman's crimes without violating the Ex Post Facto Clause. And because Loman does not contest the application of the post-amendment version of WLSA, we conclude that the charges against him were timely.[2]

---

[2] Loman briefly states that a potentially interminable limitations period would raise issues regarding the ability to mount a proper defense many years after the alleged crime was committed. To the extent Loman is raising a due process challenge to WLSA, we decline to consider it for inadequate briefing. See Bronson v. Swensen, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.").

**IV**

Lastly, Loman argues that his sentence is procedurally and substantively unreasonable. Specifically, he claims that the district court committed procedural error by failing to adequately explain the reasons for the sentence imposed. See United States v. Vigil, 696 F.3d 997, 1001 (10th Cir. 2012) (concluding inadequate explanation is a procedural reasonableness issue). Ordinarily, when considering a district court's sentencing decisions, we review its legal interpretations de novo and its factual findings for clear error. See United States v. Parker, 553 F.3d 1309, 1321 (10th Cir. 2009). However, because Loman did not object to the adequacy of the district court's explanation below, we review for plain error. See United States v. Romero, 491 F.3d 1173, 1177 (10th Cir. 2007) (holding that plain error review applies to "unpreserved challenges to the method by which the district court arrived at a sentence, including arguments that the sentencing court failed to explain adequately the sentence imposed under the statutory factors"). Plain error occurs "when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1178.

Under 18 U.S.C. § 3553(c), "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence . . . ." Id. A district court is not "required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." United States v. Cordova, 461 F.3d 1184, 1189 (10th Cir.

2006) (quotation omitted).  Instead, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."  Rita v. United States, 551 U.S. 338, 356 (2007).  This explanation must "allow for meaningful appellate review."  Gall v. United States, 552 U.S. 38, 50 (2007).

The district court correctly calculated the Guidelines range of 121-151 months, but elected to vary downwards.  It found that a 30-month sentence was "sufficient under the totality of all of the circumstances, but certainly not more than necessary to comply with title 18, Section 3553(a)."  The court expressed its concern in balancing "the magnitude of what was involved here, the crime, taking, as a public official . . . nearly a million dollars" with Loman's "health status at this point."  It also specifically referenced the § 3553(a) factors, including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and to protect the public from further crimes.  See id.  We conclude that this explanation was adequate and thus the district court did not plainly err in describing its reasons for the sentence imposed.

Loman also argues that his sentence was substantively unreasonable.  We presume that a below-Guidelines sentence is substantively reasonable when challenged by a defendant.  United States v. Balbin-Mesa, 643 F.3d 783, 788 (10th Cir. 2011).  Under the deferential abuse of discretion standard applicable to substantive reasonableness challenges, "we will reverse a determination only if the court exceeded the bounds of

permissible choice, given the facts and the applicable law in the case at hand."  United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007) (quotation omitted).  "In any given case there could be a range of reasonable sentences that includes sentences both within and outside the Guidelines range."  United States v. Martinez-Barragan, 545 F.3d 894, 904 (10th Cir. 2008) (quotation omitted).

As noted above, the district court concluded that Loman's poor health and advanced age called for a below-Guidelines sentence.  But it also concluded that the magnitude of Loman's offense called for a sterner punishment than the probation-only sentence he requested.  "We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo."  United States v. Smart, 518 F.3d 800, 808 (10th Cir. 2008).  "Instead, we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  Id.  We conclude that the district court's sentencing decision was within the range of permissible choice, and thus hold that the court did not abuse its discretion by imposing a 30-month sentence.

**V**

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-11-