**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT THOMAS KERNAN,

Defendant - Appellant.

No. 10-1318
(D.C. No. 1:07-CR-00375-JLK-1)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

I.     **INTRODUCTION**

After Defendant Robert Thomas Kernan violated the terms of his supervised release, the United States District Court for the District of Colorado revoked his release and sentenced him to 11 months' incarceration. Defendant appeals his sentence, arguing that it was substantively unreasonable. According to Defendant, his sentence was greater than necessary to satisfy the sentencing

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

purposes that Congress articulated in 18 U.S.C. § 3553(a). We disagree and affirm.

## II. BACKGROUND

On August 25, 2007, Defendant took Jet Blue Airlines Flight 491 from Boston Logan Airport to Denver International Airport. As the flight crew prepared the passenger cabin for landing, Defendant reached his hand between the legs of a female flight attendant and touched her in a highly inappropriate manner. Defendant was indicted on one count of interference with a flight crew by assault and intimidation, *see* 49 U.S.C. § 46504, and one count of knowingly engaging in unconsented sexual contact with another, *see id.* § 46506 and 18 U.S.C. § 2244(b). On November 15, 2007, he pleaded guilty to the interference count in accordance with a plea agreement.

Defendant has had a long-documented problem with alcohol, which includes eight convictions for driving under the influence and driving while impaired. Although he ordered only one beer during the flight, other passengers told authorities that they believed Defendant was drunk when he boarded the plane in Boston, that he was slurring his words, and that he smelled of alcohol. Accordingly, in addition to 10 months' imprisonment, Defendant's sentence included three years of supervised release during which he was required to "participate in a program of testing and treatment for alcohol abuse, as directed by the probation officer"; "abstain from the use of alcohol"; and "participate in a

program of mental health treatment . . . until such time as [he was] released from the program by the probation officer." R., Vol. 1 at 15.

On June 24, 2008, Defendant began the three-year term of supervised release, and a month later he began receiving mental-health and substance-abuse therapy. His treatment regime consisted of "individual therapy, medication monitoring, and random drug and alcohol testing." *Id.*, Vol. 3 at 7. Between the commencement of treatment and May 2010, Defendant failed to attend three therapy sessions and failed to submit to six random drug and alcohol tests.

Defendant was arrested on January 31, 2010, on charges of driving under the influence of alcohol and having an open alcohol container in his vehicle. His probation officer notified the district court of the violation of the terms of his supervised release and asked it to conduct an immediate compliance-review hearing. Recognizing that "[a]lcohol remain[ed] a major contributor in the defendant's criminal conduct," the probation officer requested that the court admonish Defendant to comply with the special conditions of his supervised release and to abstain from the use of alcohol and other intoxicants. *Id.*, Vol. 1 at 29.

The district court conducted the hearing on February 25, 2010. The court expressed its frustration with Defendant's failure to take seriously his many alcohol-related offenses, including "page, after page, after page, of drunk driving, disturbing the peace, [and] harassment" convictions. *Id.*, Vol. 2 at 34. It warned

Defendant that it was adopting a zero-tolerance policy regarding his supervised

release:

> This is the last time I talk to you at all. The next time you come in here it will be—you'll be leaving through that door with the marshal for two years.
> . . . .
> There is absolutely no further tolerance for anything that you do that deviates in the slightest from what your probation officer tells you to do. If he puts you on daily urinalysis checks or breathalysers, you are going to take them. And if you miss one, you're going to prison, whether you have been drinking or not.
> If you deviate one step from the regulations and the orders that have been imposed upon you by your probation officer—and he can come in here and cry and say that he wants to give you another chance, and he won't win. He's in your corner, but I am not. This is it.

*Id.* at 34–35.

Despite this warning, Defendant failed to attend a required therapy session on May 1, 2010. The following month his probation officer prepared a report alleging that Defendant had committed three types of violations of his supervised release: (1) he used alcohol on January 31, 2010, the date he was arrested for driving while intoxicated; (2) he failed to participate in alcohol abuse/mental-health treatment on three occasions, including May 1, 2010; and (3) he failed to participate in drug/alcohol testing on six occasions. All three violations qualified as grade C violations of supervised release.[1] Based on Defendant's criminal-

---

[1] Grade C violations of terms of supervised release include "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of

(continued...)

history category of III, United States Sentencing Guideline § 7B1.4(a) recommended an imprisonment range of 5 to 11 months. Referencing the district court's zero-tolerance policy regarding Defendant's supervised release, the probation officer's violation report recommended that the court sentence Defendant to 11 months' imprisonment followed by 25 months of supervised release.

The district court held a revocation hearing on July 12, 2010. Speaking first, the government stated that it did "not agree with the Probation Department," *id.* at 21, that Defendant's violations merited a top-of-the-guideline sentence. Although it acknowledged that Defendant had violated his supervised release on numerous occasions, it pointed out that only one of those violations—the missed individual-therapy session on May 1, 2010—had occurred after the court threatened to "throw the book" at Defendant at the February compliance hearing. *Id.* at 22. Defendant's counsel echoed this sentiment and asserted that "a further prison sentence . . . in excess of what [Defendant] was given for the underlying offense [wa]s greater than necessary to achieve sentencing purposes that the Court need[ed] to follow." *Id.* at 25.

The district court saw matters differently. It noted that "every facility th[e] court ha[d] available ha[d] been provided to [Defendant], . . . [a]nd the fact that

---

[1](...continued)
supervision." USSG § 7B1.1(a)(3).

[he] admitt[ed] to being an alcoholic [wa]s not an excuse." *Id.* at 28. And it explained: "I am concerned primarily about other people in our society. I am concerned about [Defendant] taking a drink and getting behind the wheel of a car. I'm concerned because I've seen mangled and crippled people because somebody said that they're trying not to drink." *Id.* The court sentenced Defendant to 11 months' imprisonment, followed by 25 months of supervised release. It said that it initially considered sending Defendant to prison for the remaining months of his supervised release but ultimately listened to the probation officer's recommendation, which it considered lenient. Defendant timely appealed.

## III. DISCUSSION

Our review of the sentence imposed is deferential. "[W]e will not reverse a revocation sentence imposed by the district court if it can be determined from the record to have been . . . reasonable." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (brackets and internal quotation marks omitted). A revocation-of-supervised-release sentence within the range suggested by the Sentencing Commission's policy statements, such as the sentence here, is entitled to a presumption of reasonableness. *See United States v. McBride*, No. 10-3206, 2011 WL 489681, *3 (10th Cir. Feb. 14, 2011).

Defendant does not contest the district court's calculation of the recommended sentencing range. He argues only that "[g]iven the severity of his alcohol problem, his relative success in controlling it after his release from

-6-

prison, and the inadequacy of the alcohol treatment available in prison, the top-of-the-Guidelines sentence imposed on [him] . . . was far greater than necessary to satisfy the sentencing purposes enunciated in 18 U.S.C. § 3553(a)." Aplt. Br. at 11. "[W]hen considered in light of the Section 3553(a) standards," he asserts, his 11-month sentence "was unreasonably long." *Id.* at 16. Instead, he claims, a "'longer period of supervision' or 'perhaps an intermediate sanction' would have been reasonable." *Id.* at 17. We are not persuaded.

To be sure, the 11-month sentence "exceed[s] the sentence that was imposed—and served—for the underlying crime." *Id.* at 19. But if the original sentence set an upper limit, incarceration could never be imposed for violations of conditions of probation. The lighter original sentence is to give the defendant a second chance, not to set a maximum punishment if he fails. Similarly, it is not determinative that the government recommended a lower sentence.

Certainly a lesser sentence would have been reasonable. But, as we have previously explained, there are often "a range of possible [sentences that] the facts and law at issue can fairly support . . . . [W]e will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 552 U.S. 38, 51 (2007). Defendant's failure to heed the district court's

warning to comply strictly with all conditions of release, together with his history of noncompliance, could rationally justify the sentence imposed. Defendant has not overcome the presumption that his within-guideline sentence fell within the realm of rationally available choices.

**IV. CONCLUSION**

We AFFIRM.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge