**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MANIVONE SAIGNAPHONE, a/k/a
Mindy Saignaphone,

Defendant-Appellant.

No. 10-1444
(D.Ct. No. 1:08-CR-00458-MSK-4)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BARRETT**, **ANDERSON**, and **BRORBY**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

submitted without oral argument.

_____

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Appellant Manivone Saignaphone, also known as Mindy Saignaphone, pled guilty to one count of conspiracy to defraud the government in violation of 18 U.S.C. § 286, after which the district court sentenced her to sixteen months incarceration – eight months to be served in prison and eight months in home detention. Ms. Saignaphone now appeals her sentence, arguing it is substantively unreasonable under the 18 U.S.C. § 3553(a) sentencing factors because the district court unreasonably discounted the evidence she proffered which demonstrated her extremely low risk of recidivism. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mrs. Saignaphone's sentence.

## I. Factual and Procedural Background

On November 4, 2008, a forty-count indictment issued against multiple individuals, including Ms. Saignaphone who was charged with nineteen counts of mail fraud, in violation of 18 U.S.C. § 1341, as well as one count of conspiracy to defraud the government, in violation of 18 U.S.C. § 286. The indictment stemmed from an investigation into a fraud scheme occurring from January 28, 2005, through September 4, 2006, involving a Colorado corporation, Olympia Financial and Tax Services, Inc. (Olympia). During Ms. Saignaphone's involvement in the fraud scheme, she worked in Denver at Olympia as a salesperson and at the United States Postal Service as a distribution and mail

processing clerk. The investigation revealed Olympia submitted fraudulent amended tax returns on behalf of taxpayers, which resulted in refunds being issued to them, from which Olympia received a commission of forty to fifty percent. Ms. Saignaphone participated in the scheme by soliciting customers and facilitating the filing of their amended tax returns, including her co-workers at the Postal Service, during which she made false representations to them about the legitimacy of Olympia's business and the legality of the amended tax returns submitted. As part of the fraud scheme, Olympia filed over 700 amended false federal tax returns with the Internal Revenue Service and over 400 amended false state tax returns with the Colorado Department of Revenue. The total loss attributed to Olympia's scheme was $2,757,744.

On December 3, 2009, Ms. Saignaphone pled guilty to Count 20 for conspiracy to defraud the government, in violation of 18 U.S.C. § 286, in return for the government requesting that the remaining counts be dismissed against her. In addition, in her plea agreement, she acknowledged $2,300,000 was the loss reasonably foreseeable and attributable to her as a result of her participation in Olympia's fraud scheme. She also agreed to cooperate with the government in its ongoing investigation in exchange for its agreement to move for a downward departure for her cooperation.

Following her guilty plea, a probation officer prepared a presentence report, calculating Ms. Saignaphone's sentence under the applicable 2009 United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). The probation officer recommended applying a base offense level of six, pursuant to U.S.S.G. § 2B1.1(a)(2), for her violation of 18 U.S.C. § 286, and increasing her base level sixteen levels, pursuant to § 2B1.1(b)(1)(I), because the actual and/or intended loss attributable to her was more than $1,000,000 but less than $2,500,000. The probation officer also recommended a three-level reduction as a mitigating role adjustment and another three-level reduction for acceptance of responsibility, for a total offense level of sixteen, which, together with her criminal history category of I, resulted in a recommended Guidelines range of twenty-one to twenty-seven months imprisonment.

In computing Ms. Saignaphone's sentence, the probation officer also acknowledged the government's intent to request a downward departure if she cooperated in its investigation. The probation officer also discussed the sentencing factors under 18 U.S.C. § 3553(a), noting, in part, the seriousness of Ms. Saignaphone's offense and the need for her sentence to promote respect for the law, provide just punishment, and afford adequate deterrence, but also explaining her lack of prior criminal history or prior imprisonment meant any sentence of incarceration would likely provide a deterrent effect on her.

Ms. Saignaphone filed formal objections to the presence report, requesting a variant sentence of probation with home detention, contending Congress intended sentences in cases like hers to be imposed through probation, but, instead, the United States Sentencing Commission recommended a Guidelines sentence of incarceration based on a flawed analysis of "empirical data and national experience." In support, she (1) provided data suggesting similar forty-four-year-old defendants with no prior criminal history had only a 6.9 percent chance of re-offending; (2) cited to federal cases from other jurisdictions which imposed or upheld variant sentences based on the defendant's statistically low recidivism risk; (3) pointed out the non-violent nature of her offense where she played a narrow and limited role in soliciting prospective customers; and (4) noted she lacked any history in committing prior offenses and maintained positive personal characteristics, as evidenced by almost two dozen letters submitted on her behalf. As a result, she argued, a sentence of home detention would result in a sentence sufficient but not greater than necessary to meet the sentencing factor goals in 18 U.S.C. § 3553(a) by promoting respect for the law, adequate deterrence, and protection of the public.

Prior to sentencing, the government filed a motion for a downward departure based on Ms. Saignaphone's substantial assistance in its investigation.

In so doing, it requested a twenty-five-percent downward departure from the low end of the Guidelines range for a sentence of sixteen months imprisonment.

At sentencing, Ms. Saignaphone did not object to the calculation of her sentence or the downward departure, but through counsel she renewed her arguments for a variant non-Guidelines sentence of eight months home detention and five years probation, again claiming an eight-month sentence of home detention would be sufficient but not greater than necessary to meet the sentencing factor goals in § 3553(a) for the same reasons articulated in her prior motion. She also continued her assertion a sixteen-level offense increase for her crime was based on a "flawed analysis of both empirical data and national experience" unsupported by "social science research" where the Sentencing Commission continually "ratcheted up" the sentences. In requesting a variant sentence, Ms. Saignaphone's counsel also pointed out another co-defendant, Annalisa Wittaker, received a downward-variant sentence of home detention and probation, but admitted Ms. Wittaker received such a variance for reasons different than those presented by Ms. Saignaphone and a different length of time than requested by Ms. Saignaphone.

In response, the government argued against a variant sentence of home detention, pointing to the fact Ms. Saignaphone's recommended Guidelines

sentence was already a relatively short one and advocating incarceration rather than home detention because her offense resulted in a foreseeable loss of millions of dollars. While it agreed co-defendant sentences must be considered, it pointed out Ms. Saignaphone's circumstances in the fraud scheme differed from Ms. Wittaker's because of the close familial relationship Ms. Wittaker had with her father, who operated the scheme, and the fact he was overbearing and domineering towards her. Rather than a variant sentence, the government renewed its request for a downward departure resulting in a sixteen-month sentence with eight months served in incarceration and the other eight months served during home detention.

After granting the government's motion for a downward departure, the district court addressed Ms. Saignaphone's request for a variant sentence. In determining a variant sentence was not justified, it acknowledged that, in imposing the Guidelines, the Sentencing Commission may have failed to pay deference to the Congressional preference for probationary sentences, and the Guidelines applicable to her offense had resulted in a historical increase or "ratcheting up." However, after noting it had authority to impose a variant sentence if it believed the Guidelines were flawed, it stated the record presented in the instant case did not support a variant sentence and, therefore, it would not second-guess either the Guidelines or whether the Sentencing Commission

inappropriately relied on faulty information in recommending such Guidelines. While the district court acknowledged an accurate interpretation of the statistical information was that Ms. Saignaphone fell into a demographic for which there is not a high risk of recidivism, it concluded that same information "in no way predict[ed] her individual likelihood of recidivism, only the likelihood of recidivism of an entire population with the same characteristics." It also explained the other co-defendant, Ms. Wittaker, received a lighter sentence than requested by Ms. Saignaphone based on Ms. Wittaker's unusual situation, including her particular vulnerability to her father, so that Ms. Saignaphone was not similarly-situated for the purpose of a variance.

Finally, the district court explicitly considered the sentencing factors under 18 U.S.C. § 3553(a), noting Ms. Saignaphone had never been convicted of a crime and possessed fine personal qualities and great family support but that she had admitted to falsely representing and inducing others with respect to the tax returns at issue and thereby caused victimization of taxpayers by defrauding the federal and state governments. The district court then imposed a sentence of eight months imprisonment and eight months home detention, to be followed by three years of supervised release and payment of $52,868.65 in restitution. It determined such a sentence was sufficient but not greater than necessary to satisfy the sentencing objectives in § 3553(a), including for the sentence to reflect the

seriousness of the offense, promote respect for the law, deter others from committing the same offense, and provide just punishment.

Ms. Saignaphone's counsel objected to the sentence, stating he "disagree[d] with the Court's analysis concerning the [G]uidelines and specifically disagree[d] that the Court [was] not in a position to determine if there ha[d] been inappropriate reliance on improper factors by the Sentencing Commission" and also "disagree[d] with how the Court interpret[ed] the recidivism statistics with respect to the demographics." The district court responded by stating, "so the record is absolutely clear, the Court's finding is that the record as submitted does not allow the Court to conclude that there is justification for a variance on either of those grounds ... [n]ot that I lack the authority to make that determination."

II. Discussion

On appeal, Ms. Saignaphone does not challenge the procedural component in the calculation of her sentence but argues her sentence is substantively unreasonable because the district court "unreasonably discounted the evidence she proffered to demonstrate her extremely low risk of recidivism." In support, she contends the district court:

> deemed [the] statistical and comparative evidence irrelevant to
> whether Ms. Saignaphone, specifically, would reoffend, ignoring
> both that statistical evidence is precisely what courts should consider

in assessing recidivism risk, and that because this was Ms. Saignaphone's first criminal offense, her recidivist risk could only be assessed by comparing her to others with similar characteristics.

As a result, Ms. Saignaphone contends the district court abused its discretion in refusing to consider such evidence and insisting such evidence would not predict her individual likelihood of recidivism. She claims her sentence is greater than necessary to comply with the basic aims of sentencing, particularly deterrence and protection of the public from future crimes.

We review a sentence for reasonableness, giving deference to the district court under an abuse of discretion standard. *See United States v. Smart*, 518 F.3d 800, 802, 805-06 (10th Cir. 2008). The district court abuses its discretion if the resulting sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (quotation marks omitted). "Our appellate review for reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *Smart*, 518 F.3d at 803. Here, Ms. Saignaphone expressly states she is not appealing the procedural reasonableness of her sentence, but is challenging the sufficiency of the § 3553(a) justifications relied on by the district court, which we have said "implicates the substantive reasonableness of the

resulting sentence" when viewed under the 18 U.S.C. § 3553(a) factors. *Id.* at

804.


If the sentence is within the correctly-calculated Guidelines range, as Ms.

Saignaphone agrees it is, we apply a presumption of reasonableness. *See United*

*States v. Kristl*, 437 F.3d 1050, 1053-55 (10th Cir. 2006) (*per curiam*). She may

rebut this presumption by demonstrating the sentence is unreasonable when

viewed under the § 3553(a) factors. *See id.* at 1054-55. The 18 U.S.C. § 3553(a)

sentencing factors include:

> The nature and circumstances of the offense, the history and
> characteristics of the defendant; the need for the sentence imposed to
> afford adequate deterrence, protect the public, and provide the
> defendant with needed educational or vocational training, medical
> care or other correctional treatment in the most effective manner;
> pertinent guidelines; pertinent policy statements; the need to avoid
> unwanted sentence disparities; and the need to provide restitution.

*United States v. Cordova,* 461 F.3d 1184, 1188-89 (10th Cir. 2006) (quoting

*United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 n.3 (10th Cir. 2005)).

"The sentencing court ... is not required to consider individually each factor listed

in § 3553(a), nor is it required to recite any magic words to show us that it

fulfilled its responsibility to be mindful of the factors that Congress has instructed

it to consider before issuing a sentence." *Id.* at 1189 (quotation marks omitted).

Instead, the district court must "state in open court the reasons for its imposition

of the particular sentence," 18 U.S.C. § 3553(c), and satisfy us that it "has

-11-

considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). In so doing, "[i]t is well established that the sentencing court is entitled to rely on uncontested facts contained in the [presentence report] for certain sentencing purposes," including to draw conclusions about the nature of the offense and history and characteristics of the defendant relevant to the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Mateo*, 471 F.3d 1162, 1166-67 (10th Cir. 2006).

With these principles in mind, we turn to Ms. Saignaphone's appeal of the substantive reasonableness of her sentence. In this case, she briefed and orally presented her arguments to the district court. The district court explicitly acknowledged Ms. Saignaphone's arguments, including her contentions: (1) the Guidelines applicable to her offense have resulted in historical increases in, or the ratcheting up of, the Guidelines; (2) the Sentencing Commission failed to pay sufficient deference to the Congressional preference for probationary sentences; (3) she fell into a demographic for which there is not a high risk of recidivism; (4) her situation required a variant sentence as provided to one of her co-defendants and other similarly-situated defendants with a statistically low risk of recidivism; and (5) her lack of criminal history, commendable personal characteristics, and strong family support should have resulted in a sentence of

home detention.  Accordingly, we are confident it considered all of Ms. Saignaphone's arguments in support of a variance.

Not only did the district court consider those arguments, but it clearly rejected them.  It concluded the record presented in Ms. Saignaphone's case did not support a variant sentence of probation, even if the Guidelines applicable to her resulted in historical increases in the Guidelines, the Sentencing Commission failed to defer to Congress' preference for probationary sentences, or she fell into a demographic for which there was a low risk of recidivism.  This is because it found Ms. Saignaphone's offense of defrauding the government and taxpayers of $2,300,000 serious and sufficient enough to deny a sentence of home detention, which it believed would be insufficient punishment for an offense of that magnitude, regardless of her lack of prior criminal history, chances of recidivism, or Congress' intent regarding probation.  Instead, it concluded the sentence imposed was sufficient but not greater than necessary to satisfy the sentencing objectives in § 3553(a), including for the sentence to reflect the seriousness of the offense, promote respect for the law, deter others from committing the same offense, and provide just punishment.  Thus, the district court sufficiently stated in open court the reasons for its imposition of her sentence under 18 U.S.C. § 3553(c), satisfying us it "considered the parties' arguments and ha[d] a reasoned

-13-

basis for exercising [its] own legal decisionmaking authority." *Rita*, 551 U.S. at 356.

As to Ms. Saignaphone's specific assertions on variant sentences for defendants with statistically low recidivism rates, we do not require courts to distinguish between a defendant's characteristics and history and those of the ordinary offender contemplated by the Guidelines when considering or imposing a variance, nor do we consider the existence of extraordinary defendant characteristics and history. *See Smart*, 518 F.3d at 808. Instead, while the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives" and provide a "measure of national practice to use as a starting point," we recognize the district court has "greater familiarity with the individual case and the individual defendant" for the purpose of determining whether to impose a variance. *Id.* (quotation marks omitted). Here, the district court recognized it had discretion or authority to impose a variant sentence if it believed the Guidelines were flawed, but under the particular facts of Ms. Saignaphone's case, it determined the Guidelines sentence of incarceration was warranted, regardless of her low chance of recidivism and other arguments to the contrary. Under the circumstances presented, Ms. Saignaphone has failed to rebut the presumption her Guidelines sentence is reasonable when viewed under the

§ 3553(a) factors or that the district court otherwise abused its discretion or imposed an arbitrary, capricious, whimsical, or manifestly unreasonable sentence.

### III. Conclusion

For these reasons, we **AFFIRM** Ms. Saignaphone's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge