**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT LYNN HARRIS,

    Defendant - Appellant.

No. 24-8081
(D.C. No. 1:14-CR-00288-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **EBEL**, and **EID**, Circuit Judges.
_____

In 2015, Defendant Robert Harris was convicted of possessing child pornography. After completing a 120-month prison sentence for that conviction, Harris began serving a lifetime term of supervised release. While on supervised release, Harris, in 2024, was again found with child pornography. That resulted in a second criminal conviction for which he was sentenced to another 120 months in prison. In addition, the district court revoked Harris' lifetime term of supervised

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

release and imposed a two-year prison term for violating the conditions of his release. In this direct criminal appeal, Harris contends that the district court abused its discretion in ordering that two-year revocation sentence to run consecutively, rather than concurrently, to the 120-month prison sentence on Harris' new conviction. We reject that argument and, having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM the district court's decision to run the revocation sentence consecutive to Harris' new prison sentence.

## I. BACKGROUND

Harris has a history of both sexually abusing children and possessing child pornography. In 2000, at age thirty-two, Harris was convicted in Wyoming state court of committing indecent liberties with a child, stemming from his long-term sexual abuse of his girlfriend's daughter, which began when the child was approximately nine and lasted until her mother discovered the abuse when the child was sixteen. Harris was also convicted of a related state offense, intimidating a witness, based on his threatening his girlfriend from jail because the girlfriend reported the sexual abuse. Harris served approximately nine years in prison on those state convictions.

Several years after his release from state prison, a woman, in June 2014, reported to police that her eight-year-old stepdaughter told her that Harris had put his hands close to the girl's private parts, making the girl uncomfortable. A few months later, agents with the Wyoming Internet Crimes Against Children Task Force executed search warrants at Harris' home and found electronic devices containing

2

413 still images and 129 videos of child pornography.  These images involved "children under twelve and children engaged in sadistic or masochistic conduct." (Aple. Br. 3 (citing II R. 13).)  As a result of these images, Harris, in 2015, pled guilty in federal court to one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  At sentencing for that offense, Harris agreed with the court that he had been "right on the edge of another hands-on offense."  (III R. 57.)  The court sentenced Harris to 120 months in prison followed by a lifetime term of supervised release.  The conditions of Harris' supervised release included not committing any new crimes; not accessing the internet except on devices approved by his probation officer; not possessing, sending or receiving any pornographic material; and submitting his person and property to search upon reasonable suspicion that he violated his supervised release terms.

Harris completed his prison sentence and began his lifetime term of supervised release on May 8, 2023.  Less than a year later, in April 2024, Harris took a routine polygraph test, which indicated that he was deceptively responding to questions about unauthorized internet use and viewing prohibited materials.  Because that was Harris' second deceptive polygraph test in six months, his probation officer searched Harris' home and car on May 9, 2024, finding two SD cards in his backpack.  Those cards "contained 13 images of child pornography, as well as hundreds" of computer generated images of child pornography.  (Aplt. Br. 3.)  The district court described those images of child pornography as "some of the worst that this Court has ever experienced" (III R. 38); "some of the most graphic and . . . most tortured" (id. at 34–

3

35).  The discovery of those images led the probation office to file a petition to revoke Harris' supervised release and the United States to charge Harris again criminally with possessing child pornography.  Because of his prior conviction for possessing child pornography, Harris this time faced a statutory mandatory minimum 120-month sentence on the new possession charge.  See 18 U.S.C. § 2252A(b)(2).

Harris and the Government reached a plea agreement to resolve both criminal cases.  To resolve the new criminal possession charge, Harris and the United States entered into a Fed. R. Crim. P. 11(c)(1)(C) plea agreement which, if accepted by the court, would require the court to sentence Harris to 120 months in prison—the statutory mandatory minimum for the charged offense.  The prosecutor further agreed, pursuant to Rule 11(c)(1)(B), to recommend that the court impose a concurrent sentence for Harris' supervised release violation.[1]

In a combined sentencing/revocation proceeding following his guilty plea to the new possession charge, the district court accepted the parties' Rule 11(c)(1)(C) plea agreement and imposed the statutory mandatory minimum 120-month prison sentence for the new criminal conviction, to be followed by ten years of supervised release.  The court then revoked Harris' prior lifetime term of supervised release for his earlier (2015) conviction, after he admitted to violating the terms of his release.

---

[1] Rule 11(c)(1)(C) allows the parties to "agree that a specific sentence . . . is the appropriate disposition of the case . . . (such a recommendation or request binds the court once the court accepts the plea agreement)."  Rule 11(c)(1)(B), on the other hand, allows the parties to "recommend . . . that a particular sentence . . . is appropriate," but that "recommendation or request does not bind the court."

Although the sentencing guidelines recommended a six-to-twelve-month prison sentence for the supervised release violation, the court instead imposed the statutory maximum revocation sentence—two years—with no further supervision.

The prosecutor, along with defense counsel, argued that the revocation sentence should run concurrently with the 120-month sentence for the new conviction. In support of concurrent sentences, the parties cited, among other things, Harris' age (fifty-six); the fact that all but thirteen of the images Harris possessed were computer generated and, therefore, did not involve actual child victims; his criminal conduct was the result of an addiction; and it is not uncommon for child-pornography offenders to recidivate. The probation officer, instead, recommended consecutive sentences.

Considering the relevant 18 U.S.C. § 3553(a) sentencing factors,[2] the district court ordered Harris' two-year revocation sentence to run consecutively to the 120-month sentence for his new conviction. In doing so, the court stated that Harris presented a "danger," "a true threat . . . to relapse and commit further offense." (III R. 39–40.) In support of that conclusion, the court further noted that Harris had

---

[2] In determining a sentence following revocation of supervised release, 18 U.S.C. § 3583(e) directs a sentencing court to consider most of the sentencing factors listed in 18 U.S.C. § 3553(a), including: § 3553(a)(1) (nature and circumstances of the offense and the defendant's history and characteristics), (a)(2)(B) (deterring criminal conduct), (a)(2)(C) (protecting the public from further crimes by the defendant), (a)(2)(D) (providing the defendant with educational and vocational training, medical care, and correctional treatment), (a)(4) (sentences provided by the sentencing guidelines), (a)(5) (sentences recommended in sentencing guideline policy statements), (a)(6) (the need to avoid unwarranted sentencing disparities), and (a)(7) (the need to provide victims restitution).

"minimized his conduct in 2000" with his girlfriend's daughter; in federal prison, Harris had "declined nonresidential sex offender treatment because he was too busy"; and, although he did attend counseling while on supervised release, during that counseling he "greatly minimized his [first possession] offense and blamed the individual sending him images of underage females." (III R. 36.) In addition, the court indicated that a revocation sentence consecutive to Harris' sentence for his new criminal conviction was warranted to address the separate fact that Harris had violated the terms of his supervised release.

On appeal, Harris argues that running the two-year revocation sentence consecutively, rather than concurrently, was substantively unreasonable.

## II. DISCUSSION

We review the substantive reasonableness of a sentence for an abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). That includes a sentencing court's decision on whether to run a supervised release revocation sentence consecutively or concurrently. See United States v. Rodriguez-Quintanilla, 442 F.3d 1254, 1255–56 (10th Cir. 2006). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Ortiz-Lazaro, 884 F.3d 1259, 1265 (10th Cir. 2018) (quoting United States v. Steele, 603 F.3d 803, 809 (10th Cir. 2010)). Here, we cannot conclude that the district court's decision to run Harris' revocation sentence

6

consecutive to the sentence for his new conviction was arbitrary, capricious, whimsical, or manifestly unreasonable.

As a starting point, the relevant sentencing guideline policy statement in effect at the time of Harris' sentencing provided for a consecutive revocation sentence:

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

U.S.S.G. § 7B1.3(f) (2024).[3]  In addition, the introductory commentary for the sentencing guidelines' Chapter 7 reiterates that "[i]t is the policy of the [Sentencing] Commission that the sanction imposed upon revocation is to be served consecutively to any other term of imprisonment imposed for criminal conduct that is the basis of the revocation."  See also U.S.S.G. Ch. 7, intro. cmt. 3(b) (stating that "the sentence imposed upon revocation" is a "sanction . . . for failing to abide by the conditions of the court-ordered supervision," separate from "the punishment for any new criminal conduct").  See generally United States v. Contreras-Martinez, 409 F.3d 1236, 1241 (10th Cir. 2005) (noting "[t]he violation of a condition of supervised release is a breach of trust").

---

[3] After Harris' 2024 sentencing, a new sentencing guideline policy statement, U.S.S.G. § 7C1.4, took effect on November 1, 2025.  That new provision addresses only supervised release revocations, but still calls for consecutive revocation sentences.  Id. § 7C1.4(b) (2025).

Although advisory, see, e.g., Ortiz-Lazaro, 884 F.3d at 1265, the Sentencing Commission's policy statement, § 7B1.3(f), supports the district court's decision in this case to impose a consecutive revocation sentence. See Rodriguez-Quintanilla, 442 F.3d at 1258–59 (holding sentencing court's decision to apply § 7B1.3(f) "exactly as written" by imposing consecutive supervised release revocation sentence was neither an abuse of discretion nor unreasonable); see also Ortiz-Lazaro, 884 F.3d at 1264–65 (noting consecutive revocation sentence "was in accordance with" § 7B1.3(f)); Contreras-Martinez, 409 F.3d at 1242 (holding district court reasonably applied the advisory "Chapter 7 policy statement exactly as written" and was "well within its discretion" to impose a consecutive revocation sentence).[4]

Our conclusion that the district court did not abuse its discretion is further bolstered by the court's reasoned explanation for imposing a consecutive revocation sentence, an explanation that was grounded in the relevant § 3553(a) sentencing factors, including Harris' criminal history and the need to protect the public from the possibility that Harris will commit similar crimes in the future. The sentencing court accurately noted, among other things, that Harris' criminal history involved "hands-on" sexual abuse of children, as well as possessing child pornography; Harris, over the years, was reluctant, and at times refused, to participate in sex offender

---

[4] We, thus, reject Harris' suggestion in his brief that the district court imposed a consecutive revocation sentence in order to add to the punishment for Harris' new conviction. See Aplt. Br. 11–12 (arguing that, "[i]n a way," the district court's decision to impose a consecutive revocation sentence was "effectively an end-run around the Rule 11(c)(1)(C) [plea] agreement" that provided for a 120-month sentence on Harris' new conviction for possessing child pornography).

therapy; and he had a tendency to blame others for his conduct, including the child victims. We, therefore, cannot conclude that the district court abused its discretion in running Harris' revocation sentence consecutive to the sentence on his new criminal conviction.

Harris' several arguments to the contrary are unavailing. Particularly unpersuasive is Harris' argument that, if the 2024 conviction for possessing child pornography had been his first such offense, then the combined recommended guideline prison ranges for that offense and his supervised release violation would have been much shorter than the combined sentence actually imposed. That argument is based on a false premise. The 2024 conviction was Harris' second conviction for possessing child pornography, subjecting him to a statutory mandatory minimum 120-month prison sentence. Further, the sentencing court's reasons for imposing a consecutive revocation sentence included that Harris had committed a second offense involving child pornography and the court's concern that he would do so again in the future.

On appeal, Harris restates this argument and others that he made at sentencing, in seeking a concurrent sentence. The district court considered and rejected those arguments in a reasoned manner, based on the relevant § 3553(a) sentencing factors. That was not an abuse of discretion.

## III. CONCLUSION

Because the district court did not abuse its discretion in running Harris'

revocation sentence consecutive to the sentence for his new conviction, we AFFIRM.


Entered for the Court


David M. Ebel
Circuit Judge